# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    **:**

                                                    **3:15-CR-154**

                                      **:**

      **v.**

                                      **:**      **(JUDGE MANNION)**

**KYME ASHBY,**                      **:**

                 **Defendant**       **:**

## MEMORANDUM

## I.    BACKGROUND

On May 11, 2020, defendant Kyme Ashby, an inmate at Danbury Federal Prison Camp ("DFPC"), Connecticut, filed, *pro se*, a Motion for Immediate Release to Home Confinement and an attached Addendum to her Motion, (Doc. 916), pursuant to the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003. The court also finds that Ashby is seeking Compassionate Release under 18 U.S.C. §3582(c)(1)(A). In her filing, Ashby requests the court to direct the BOP to immediately transfer her from prison to home confinement at her "father's" (Kristin Nickels)[1] house in the Bronx, New York, which the court construes as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, related

---

[1]The court notes that in her Addendum, Doc. 916 at 3, Ashby indicates that Kristin Nickels is her father but she also refers to this person as "Ms. Nickels." The PSR reveals that Ashby's father, Harold, is dead and that her mother, Helena, lives in the Bronx. (Doc. 723 at 11).

to her 30-month prison sentence, due to the COVID-19 pandemic. (Doc. 916).[2] In particular, defendant Ashby seeks the court to alter her sentence and to immediately release her from confinement in prison at DFPC to home confinement with Ms. Nickels in the Bronx, New York, due to her fear that she may contract the COVID-19 virus in the prison Camp if it is introduced there in the future. Ashby concedes that currently DFPC "is not infected" with the virus but she states that the Danbury prison was designated by Attorney General Barr as a "hot spot" in his April 3, 2020 Memorandum to the BOP. She also contends that Danbury prison has over 40 infected inmates and 2 deaths due to the virus. However, Ashby states that as of March 13, 2020, no visitors have been allowed at DFPC. Further, Ashby does not allege that she has any chronic medical condition that will put her at greater risk to suffer more severe consequences if she does contract the virus. Also, defendant is currently 30 years old and not in the high risk age category.[3] Alternatively,

---

[2]The court notes that although Ashby cites to the CARES Act §12003 as the statutory basis for her motion, the court does not find her filing as a motion against the government. Rather, upon review, the court finds that it is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. *See* Cordaro v. Finley, 2020 WL 2084960 (April 30, 2020). Thus, defendant is actually the petitioner, and the proper respondent is the Warden at DFPC, who Ashby indicates is Warden Easter. *See* 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).

[3]The court notes that it considered defendant Ashby's age, 30 (DOB June 8, 1989), as well as her physical condition stated in her PSR, (Doc. 723

the court could construe defendant Ashby's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

However, for the reasons set forth below, the court will construe defendant Ashby's motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and it will transfer her case to the District of Connecticut, where habeas jurisdiction properly arises.[4]

Insofar as defendant Ashby's filing is considered as a motion for compassionate release, it will be dismissed without prejudice for lack of jurisdiction due to her clear failure to exhaust her BOP administrative remedies under §3582(c)(1)(A)(i). In fact, Ashby states that "[d]ue to exigent circumstances regarding the imminent threat of grave bodily harm or death, [she] is excused from exhaustion of administrative remedies prior to seeking judicial intervention." (Doc. 916 at 2). To the extent defendant is deemed as

---

at 13), which reflects that she reported "satisfactory physical health." Also, there was no report that she takes any medication for any medical condition.

[4] "There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." Furando v. Ortiz, 2020 WL 1922357, *3 (D.N.J. April 21, 2020) (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). Even though it appears that defendant has not exhausted all of her administrative remedies available with the BOP regarding her habeas petition, the court will leave it up to the District Court that has jurisdiction over his petition to decide whether it should be dismissed without prejudice. See Furando, supra (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

seeking the court to order the BOP to find her eligible for immediate home confinement designation under the CARES Act, the court does not have authority to grant her request for relief and order the BOP to release her to home confinement.[5]

## II.   DISCUSSION[6]

In her present Motion and Addendum, (Doc. 916), Ashby seeks her immediate transfer from DFPC to home confinement and requests the court to allow her to serve the remainder of her 30-month prison sentence in home confinement stating that she is the mother of 3 minor children and wants to care for them. She also states that since FCI-Danbury has "significant levels of infection at several site facilities" she fears contracting the COVID-19 virus if it is introduced at DFPC, "which will result in severe illness or death." Further, Ashby provides her re-entry plan in her motion if the court directs the BOP to release her to home confinement.

---

[5] Even though the government has not yet responded to Ashby's motion, in light of the emergency nature of the motion, the court will transfer it to the proper District to the extent it is a §2241 habeas petition. Also, insofar as Ashby's motion is one for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), the court can act *sua sponte* to dismiss it based on lack of jurisdiction since it is apparent on the face of her motion that she did not exhaust her administrative remedies.

[6] Ashby is currently serving a 30-month prison sentence that was imposed by this court on November 14, 2019, after she pled guilty to conspiracy to distribute and possess with intent to distribute heroin and cocaine base, 21 U.S.C. §846. Ashby was also ordered to be on 3-years of supervised release following the service of her prison sentence. (Doc. 907).

Additionally, Ashby appears to indicate that she is not a danger to the community and that she is a low risk offender who the BOP is considering for release from prison under the CARES Act due to the COVID-19 pandemic. As mentioned, Ashby does not allege that there are currently any inmates or staff at DFPC with COVID-19. However, she alleges that "Danbury FCI has not followed safety measure[s] suggested by the CDC such as keeping inmates and employees six feet apart in [cells] or communal arears to avoid the spread of COVID-19." Ashby states that "social distancing is difficult … if not impossible." Ashby further alleges that "Warden Easter and Director Carvajal are violating [her] constitutional right to receive adequate medical and safety care." She does not specify how her 8th Amendment right to proper medical care is allegedly being violated. In any event, such a claim must be raised in a civil rights action under Bivens in the District Court in Connecticut after Ashby exhausts her BOP administrative remedies at DFPC.

Thus, Ashby is construed as contending that the recommended safe practices to curtail the spread of the virus cannot be accomplished at DFPC even though "[it] is virus free at this point in time." Based on these allegations, Ashby contends that the court should "allow [her] immediate release to home confinement" and that she believes she qualifies for such release from prison under the CARES Act.[7]

---

[7] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, see Cordaro,

As this court recently did in Cordaro, 2020 WL 2084960, *3, as well as other similar cases, *see e.g.,* United States v. Taylor, 2020 WL 2084974 (M.D.Pa. April 30, 2020), the court construes Ashby's instant filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho

---

*supra*, and since many of the measures are found on the BOP's website, they are not repeated herein. Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The court also notes that according to the NYC Health Dept., there have been over 185,000 confirmed cases of COVID-19 in the City and 41,953 cases in the Bronx, as of May 13, 2020.

Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." *Id.* at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." *Id.* The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas petition. *See also* <u>Verma v. Doll</u>, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); <u>Saillant v. Hoover</u>, 2020 WL 1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in <u>Verma</u> and <u>Camacho Lopez</u> "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [<u>Ali v. Gibson</u>, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases and as well as in <u>Cordaro</u>, 2020 WL 2084960, *4, and <u>Taylor</u>, *supra*, although defendant is not an ICE detainee awaiting her removal, she similarly seeks immediate release

7

from custody at DFPC since she believes her health is in imminent risk of contracting the COVID-19 virus at the camp if it is introduced there, which "is unequivocally a habeas remedy." <u>United States v. Serfass</u>, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). As the court in <u>Camacho Lopez</u> explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing <u>Woodall</u>, 432 F.3d at 241-44).

In her instant filing, as in <u>Cordaro</u>, 2020 WL 2084960, *4, defendant clearly seeks relief that affects the execution of her 30-month prison sentence since she requests the court alter its terms and to immediately release her to home confinement. *See* <u>Cordaro</u>, 2020 WL 2084960, *4. Although Ashby appears, in part, to raise a challenge to the conditions of her confinement at DFPC by alleging she is being denied adequate medical care, she is seeking release from prison in her motion and not damages, and thus her filing is not a civil rights action. *See* <u>Parmeley v. Trump</u>, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or <u>Bivens</u>, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of

8

custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

Additionally, while Ashby does not directly state that she has filed a request with the Warden for compassionate release to home confinement due to the COVID-19 virus, she alleges that she should be excused from exhausting her BOP administrative remedies due to the alleged "exigent circumstances." Thus, Ashby seemingly contends that the COVID-19 virus along with the alleged unsafe conditions at the camp present an extraordinary situation in which exhaustion should be waived.

In any event, it is clear that Ashby has not exhausted her BOP administrative remedies prior to her instant filing.

Also, Ashby claims that due to the threat that she may contract the COVID-19 virus at DFPC she qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4

(E.D.Va. April 10, 2020). As stated, Ashby does not state that she has requested compassionate release to the Warden at DFPC, and her motion for compassionate release must be dismissed for lack of jurisdiction since she has clearly not exhausted her administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [her] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [her] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C.

§3582(c)(1)(A(i) is satisfied). Here, it is apparent that Ashby has not yet availed herself of her administrative remedies.

Secondly, the court cannot yet determine if Ashby has demonstrated that "extraordinary and compelling reasons" warrant a reduction of her sentence even though she alleges that the conditions at the camp create a high risk that if the COVID-19 virus is introduced there, she will contract it, despite the fact that she admits there are presently no cases of the virus at DFPC, since she has not exhausted her administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

Further, Ashby does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that she could be unduly prejudiced if she had to wait to exhaust her administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3. Rather, she only speculates

that the prison conditions may lead to her contracting the COVID-19 virus in the future.

As the Third Circuit in <u>Raia</u>, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* <u>Feiling</u>, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in <u>Raia</u>] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); <u>Smith</u>, *supra* (same); <u>Edwards</u>, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in <u>Raia</u> that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'").

Moreover, the Third Circuit in <u>Raia</u>, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on

added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement.").

Additionally, insofar as Ashby is relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for her release to home confinement, such reliance is misplaced.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

[The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act

temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, [8] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

In short, the court finds that Ashby's motion should be construed as a §2241 habeas petition since she seeks relief affecting how her sentence is executed, i.e., serving her sentence in home confinement as opposed to confinement in prison to which she was sentenced. *See* United States v. Serfass, 2020 WL 1874126 (M.D.Pa. April 15, 2020).

A petitioner may seek §2241 relief only in the district in which he is in custody. United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has no jurisdiction over defendant's habeas claims as she is not detained within this district at the time of the filing of her motion. As such, Ashby must file her §2241 habeas petition in the U.S. District Court for the District of Connecticut since she is confined in prison in that district. Pursuant

---

[8] *See* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

to 28 U.S.C. §2243, "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, for purposes of a habeas action, the petitioner's custodian is the warden of the institution holding the petitioner. *Id.* at 442. In the instant case, the only appropriate respondent is the Warden of DFPC, where Ashby is currently confined.

In light of the foregoing, the court will direct the clerk of court to docket Ashby's Doc. 916 motion as an emergency §2241 habeas petition and to assign it a separate civil number. The court will then direct the clerk of court to transfer Ashby's habeas petition to the U.S. District Court for the District of Connecticut.

## III.   CONCLUSION

Defendant Ashby's Motion for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 916)**, is construed as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and the clerk of court will be directed to docket defendant's Doc. 916 motion as an emergency §2241 habeas petition and to assign it a civil number. The clerk

16

of court will then be directed to transfer defendant's §2241 habeas petition to the U.S. District Court for the District of Connecticut as the proper jurisdictional court. To the extent that defendant's filing could be considered as a motion for compassionate release, it is properly filed, will remain in her criminal case and be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to her failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as defendant is seeking this court to compel the BOP to find that she is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 14, 2020**
15-154-01